## Miller *versus* Springer *et al.*

1. In election, if the language of a will admit of being restricted to property disposable by the testator, the inference is that he did not intend it to apply to that over which he had no power of disposal.

2. A general devise of real estate shows an intention in the testator to give nothing more than what strictly belongs to him, although he owns no real estate on which the devise can operate.

3. Evidence dehors the will, that the testator considered the land to belong to him, and intended it should pass under the will, is inadmissible.

4. A legatee and executor, as attorney and agent for the testatrix in her life, and as her executor, had treated land as hers and intended to be passed by her will, although the title appeared to be in him. He was estopped from setting up an adverse title against her estate.

November — 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Fayette county* : Of October and November Term 1871, No. 214.

This was an action of ejectment for about 29 acres of land, brought March 22d 1866, by John Bruner against Jonathan D. Springer, Henry H. Beeson, and Jacob B. Miller. Jacob B. Miller disclaimed and his name was stricken from the record as a defendant. Henry H. Beeson having died, Jacob Beeson and others, his heirs at law were substituted.

On the trial, September 14th 1871, before Gilmore, P. J., Jacob B. Miller having shown that Bruner's title was in him, he was substituted as plaintiff, as mentioned below.

[Miller *v.* Springer.]

The title had been in Zadock Springer, deceased, and the premises in dispute had been sold under proceedings in partition in the Orphans' Court, by Jacob B. Miller, administrator, &c., of the decedent, to James Piper; the sale was confirmed December 13th 1847; the purchase-money was to be paid in three annual payments. The estate of Springer being indebted to Rachel Skiles, the second payment was assigned to her in discharge of her debt, and Piper gave his judgment-note to Mrs. Skiles for the amount. Piper executed a mortgage of the premises to The American Life Insurance Company. On the 18th of September 1854, after the execution and recording of the mortgage, Mrs. Skiles, by Miller, as her attorney, entered judgment for $448.69 against Piper on his note to her. Under this judgment the land was sold by the sheriff to Mrs. Skiles, Miller acting as her attorney, and the sheriff's deed acknowledged July 1st 1857; on the 4th of July, by deed endorsed on the sheriff's deed, Mrs. Skiles conveyed the premises to Miller. Proceedings were afterwards instituted on the Insurance Company's mortgage and the land sold by the sheriff to Alfred Howell, Esq., on the 10th September 1857;—on the 12th of September 1857, Miller reconveyed to Mrs. Skiles: she on the same day conveyed to Ellis Baily. The sheriff's deed to Howell was acknowledged September 15th 1857. Howell conveyed January 5th 1865, to Smith Fuller, who on the 7th of February conveyed to John Gallagher, and on the 24th of January 1866 he conveyed to John Bruner. The foregoing was admitted and shown by the evidence by both parties.

The defendants further gave in evidence the auditor's report distributing the proceeds of sale under Mrs. Skiles's judgment against Piper, by which the whole after-payment of costs, was appropriated to that judgment;—also deed March 7th 1862, Ellis Baily to Mrs. Skiles: she died May 8th 1865. They gave in evidence her will dated May 15th 1860, by which, after the devise of one lot, she ordered all the remainder of her estate, real and personal, to be sold, and gave a number of legacies to different persons, amongst the rest $1500 to Jacob B. Miller, and gave the residue equally to Henry H. Beeson, Jacob B. Miller, and Jonathan D. Springer; she appointed Miller and Springer, executors.

The defendants gave evidence that after the premises had been sold to Mrs. Skiles by the sheriff, she had possession until her death; after her death Springer had been in possession of part and Miller of part; the premises had never been sold by the executors, they were appraised at $2610 for collateral tax as the estate of Mrs. Skiles, each of the residuary legatees, including Miller, received $4352; he also received his legacy of $1500.

In the account of Miller and Springer, there is a credit of $1920 paid for collateral inheritance tax, the tax on the premises in dispute being a part.

[Miller *v.* Springer.]

Smith Fuller testified that he bought the land for Miller and at his request; Miller paid the consideration and directed witness to convey to Gallagher, who paid witness no money;—Miller paid for the stamps and all expenses. He told witness that "he wanted to buy this title, which was a cloud upon the title, so that he could get it cheap when it was offered for sale by the executors by driving off bidders."

Gallagher testified that he had not been present when Fuller made the deed to him;—he got the deed at the justice's, he paid no consideration and never had any conversation with Fuller about it, he learned from Miller that the deed would be made to him (witness); he did not contract to sell to Bruner; never got any money from Bruner for it. Miller directed the title to be made to witness and then he "obeyed his orders in conveying to Bruner;" he never saw Bruner; Miller paid for the stamps.

Bruner testified that he had been living in Louisville, Stark county, Ohio, for fourteen years; had never been in Fayette county or seen the premises; never knew Gallagher; had never made any contract verbal or written about the premises; never paid any purchase-money for them; the deed had been made to him without his knowledge or consent; he knew nothing of the matter till the deed was delivered to him by mail in Louisville; he reconveyed the land to those who had conveyed it to him, but could not recollect the names; he had no understanding about the sale or transfer; no consideration had been paid to him but the expenses of the transfer: no agreement had been had with him as to the land or as to the suit; nor had he been asked to allow his name to be used in the suit.

A rule had been taken on the executors of Mrs. Skiles to show cause why they should not sell this land under her will. To this rule Miller, June 5th 1865, made answer under oath as one of the executors,—that the title was in Mrs. Skiles, she having bought it at sheriff's sale when sold as the property of Piper; that it had been sold to Howell under the Insurance Company's mortgage, Howell's title was afterwards vested in Bruner, who brought an ejectment for the land against the executors and devisees of Mrs. Skiles, in the Court of Common Pleas of Fayette county; the case being reached and plaintiff not being ready for trial he was compelled to suffer a nonsuit; Bruner had since brought suit in the United States Court for the Western District of Pennsylvania; which suit would probably be tried at the next term of that court.

"Under these circumstances the respondent is of opinion that while the title to the property in question remains unsettled it cannot be sold except at a great sacrifice. The respondent therefore is of opinion that as the will of the said Rachel Skiles provides that the real estate of the deceased should be sold by her executors

at such time as they shall deem best for the interest of the said estate, the discretion there imposed upon them, requires not to sell the said real estate before the title to said real estate shall be settled."

They gave evidence showing that Miller had been attorney for Mrs. Skiles, in the transactions relating to this land. The plaintiff gave in evidence deed, July 20th 1867, from John Bruner to himself for the premises in dispute,—and the court against the objection of defendants, allowed Miller's name to be substituted as plaintiff.

The plaintiff's point which was refused was :—

" If the defendants were plaintiffs in this action, they could not recover without tendering to defendant the money which he paid Alfred Howell. Therefore, unless the amount of money, with interest, is paid or tendered to the plaintiff, he must recover."

The defendant's 1st and 2d points which were affirmed were :—

1. " J. B. Miller being a legatee under the will of Rachel Skiles, and having received a specific legacy of fifteen hundred dollars, and his share of residue as far as distributed, he cannot now impeach it or set up a title to this land or in any way defeat the provisions of the will."

2. " Having been appointed by Rachel Skiles one of the executors of her will, and having accepted, qualified and acted as such, he cannot dispute the provisions of said will nor set up any title to real estate claimed by her."

The court charged : " Jacob B. Miller the plaintiff, now in this case, was a special legatee and co-residuary devisee and one of the executors of the will. He accepted the office of executor, received the special legacy and has received large amounts on the residuary estate as the uncontradicted evidence shows. The whole evidence in the case shows that the property in dispute was claimed by Mrs. Skiles in her lifetime, that she died in possession, and that her executor has treated this as part of her estate devised in her will. [Now if you determine that the property was devised by the testator, and as one of the devisees Mr. Miller so understood and accepted the benefit of the will, he will be estopped to set up his title.]

[" If you believe that J. B. Miller was attorney and counsel for Mrs. Skiles in conducting the sale on her judgment *v.* Piper, and continued to act as her counsel afterwards, we charge you that any title which he acquired to the property from another source would enure to her benefit], and that when he proposed to purchase the title from Howell, it was his duty to offer the purchase in the first place to his client : if she declined, then it would have been competent for him to purchase."

The verdict was for the defendants.

The plaintiff took out a writ of error, assigning for error the answers to the points and the portions of the charge in brackets.

[Miller v. Springer.]

*A. S. Fuller* and *E. Campbell,* for plaintiff in error.—To raise an election the testator must give his own property; the legal presumption being that he gives no more than belongs to him: Adams's Eq. 219; Stratton *v.* Bert, 1 Ves. Sr. 285.

*Collins & Baily, D. Kaine* and *A. E. Willson,* for defendant in error.—Miller having been the executor of Mrs. Skiles, treated the land as hers, &c., cannot set up an adverse title: Hoover *v.* Hoover, 5 Barr 354; Fulton *v.* Moore, 1 Casey 418; Duffey *v.* Presbyterian Cong., 12 Wright 52. Being the attorney for Mrs. Skiles in the purchase of the property, he could not set up an adverse title: Galbraith *v.* Elder, 8 Watts 94; Henry *v.* Raiman, 1 Casey 358; Fisk *v.* Sarber, 6 W. & S. 30.

The opinion of the court was delivered, January 9th 1872, by
SHARSWOOD, J.—The unqualified affirmance, by the learned judge below, of the defendant's first and second point was undoubtedly error. The will of Rachel Skiles, on its face, raised no case of election. It did not assume to devise the property in question as her own, although her title to it, if she had any, certainly did pass by general words. It is well settled, and accords with the reason and principle of the thing, that if the language of the will admit of being restricted to property belonging to or disposable by the testator, the inference will be that he did not intend them to apply to that over which he had no disposing power. A general devise of the testator's real estate has always been held to show an intention to give what strictly belongs to him, and nothing more, even if the testator had no real estate of his own upon which the devise could otherwise operate: 1 Jarman on Wills 393. Nor can evidence *dehors* the will be admitted to show that the testator considered the land in question to belong to him, and intended it to pass under the will: Id. 391. Now, according to the will of Sarah Skiles, after devising a certain out-lot specifically, she directs all the balance of her property to be sold by her executors, and the proceeds to be distributed to certain persons named. On the face of the will there was no devise of the premises described in the writ of ejectment, and it was error, therefore, in the learned court to say, as they did in affirming the defendant's first point, that "Jacob B. Miller being a legatee under the will of Rachel Skiles, and having received a specific legacy of fifteen hundred dollars, and a share of the residue as far as distributed, cannot now impeach it, or set up a title to this land, or in any way defeat the provisions of this will;" and there was like error in the unqualified affirmance of the second point of the defendants, "that having been appointed by Rachel Skiles one of the executors of her will, and having accepted, qualified and acted as such, he cannot dispute the provisions of said will, nor set up

20 P. F. SMITH—18

title to real estate claimed by her." In like manner the learned judge erred in his charge, in referring to the fact that the property in dispute was claimed by Mrs. Skiles in her lifetime, and that she died in possession. It is evident, according to the authorities, that this was insufficient to put a legatee to his election who was not informed by the will itself that the testatrix had undertaken therein to dispose of his property as her own.

But while the plaintiff has convicted the learned judge below of this error in the abstract, he has failed to convince us that he was injured thereby. For although evidence cannot be given *dehors* the will to prove that it was the intention of the testator to devise the property in question, alleged to belong to the legatee, that is an entirely different question from showing that the legatee himself had dealt with it as belonging to the testator, and as having passed by the will. In the case before us it was shown, by evidence not merely uncontradicted, but which could not be contradicted, because it was of record, that the plaintiff Jacob B. Miller, as one of the executors of Rachel Skiles, had treated the premises as part of her estate and intended to pass by her will. Not only as one of the executors did he return this lot to be appraised for the collateral inheritance tax, and claimed credit in his account for the tax so paid, but in answer to a rule taken upon the executors in the Orphans' Court to show cause why they should not sell this lot under the power in the will, he put on the record, June 5th 1868, an answer under oath, in which he alleges, as a reason for not selling, that an ejectment was pending in the District Court of the United States for the Western District of Pennsylvania, by one John Bruner, against the executors, and that in the exercise of the discretion reposed in them by the testatrix they ought not to sell under the power before the title shall be finally settled. He states the title set up in that ejectment to have been derived from Alfred Howel, Esq., the vendee of the sheriff under the Piper mortgage to the American Life and Trust Insurance Co., the very title under which the plaintiff claims to recover in this ejectment—having produced a deed from John Bruner and wife to him, dated July 20th 1867. At the very time, then, that this answer was filed of record, it appears that the legal title was in Miller, and indeed the evidence shows that the original purchase from Howel was made with his money and for his use. Surely if there is any force in the maxim *allegans contraria non est audiendus*, it ought to be applied to such a case as this: Broom's Legal Maxims 160. Jacob B. Miller ought not now to be heard to allege that the Piper lot was not intended to pass by the will of Mrs. Skiles as part of her estate, and this being so, he was precluded on every principle of equity, by his acceptance of the benefits devised under that instrument, from setting up any adverse title in himself to the lot in question. The learned judge would, there-

[Miller *v.* Springer.]

fore, have been entirely justified, under the evidence upon this point alone, to have withdrawn the case from the jury and instructed them to find for the defendants.

This conclusion at which we have arrived evidently renders it unnecessary to consider the remaining specifications of error.

Judgment affirmed.