## Patterson Estate

204

*Sidney L. Wickenhaver, W. H. Lathrop*, of *Montgomery, McCracken, Walker & Rhoads* for the beneficary exceptants.

*Cuthbert H. Latta, Maxwell E. Verlin*, of *Barnes, Dechert, Price, Smith & Clark*, for the accountant.

HUNTER, J. November 12, 1948.—The application of the doctrine of equitable election to the facts of this case is unique.

It is commonly applied between beneficiaries who claim under the same instrument. Where a testator gives a legacy to A, and by the same will gives A's property to B, B may put A to an election. A may not claim the legacy and also retain his property: Stump v. Findlay, 2 Rawle 168; Cooley v. Houston, 229 Pa. 495; 1 Jarman on Wills (7th Ed.) 510.

In the instant case the doctrine is invoked by a stranger to the will, a trustee under a deed of trust made by testator in his lifetime. The trustee permitted settlor-trustee, without semblance of right, to make certain exchanges of securities in the years 1920 to 1926 whereby $66,580.50 in value was withdrawn from the trust estate, and the trustee seeks to avoid a surcharge for so doing.

Testator left a testamentary estate of $2,600,000. By his will, inter alia, he gave legacies of $25,000 each to nephews and nieces (who are also remaindermen under the deed), and the residue which was the bulk of his estate in trust for his widow for life, with remainder to five charities.

Of the securities withdrawn by settlor, $32,000 of United States Liberty Bonds of the value of $31,456 were not among the assets of his testamentary estate at the time of his death in 1927, and in this respect the finding of the adjudication should be modified. The rest of the securities of the value of $35,124.50 were

intact, and increased residuary estate by that amount.

We may assume that the trustee, though it had surrendered the securities to settlor, could at the settlement of the executors' account in 1928 have impressed a trust upon the securities which were then intact and reclaimed them for the beneficiaries of the trust. This recovery would have been at the expense of the residuary legatees.

The situation was different as to the $31,456 of securities which could not be found. They have not been traced into the estate which passed under the will; testator may have consumed or otherwise disposed of them in his lifetime. The trustee could have recovered $31,456 in damages representing the missing securities, testator having been a participant in the breach of trust, but in such claim the trustee was an ordinary creditor, and we know of no decisions extending this type of election beyond specific property. A creditor's claim comes more appropriately within the second contention of the trustee, hereinafter discussed, that the legacies were in satisfaction of the debt.

The right which the trustee has is not against the pecuniary legatees, and the trustee cannot call upon them to elect. They did not profit by the wrong, and had no part in it. The profit went to the residuary legatees.

The persons, if any, who could have put the legatees to an election were the residuary legatees. The trustee is not a party to the will and cannot speak for the residuary legatees.

Perhaps the trustee should seek recovery from the residuary legatees, but that would present some difficulty. The events here spoken of took place many years ago. The questioned transactions were in the years 1920 to 1926; the testator died in 1927, and his executors' account was confirmed and distribution made in 1928.

There are other reasons why the pecuniary legatees have no duty of election.

The will contains no specific gift or mention of the property in question. In order to raise a case of election there must appear in the will itself a clear intention on the part of testator to dispose of that which is not his own. A general devise shows an intention to give nothing more than that which strictly belongs to him: Miller v. Springer et al., 70 Pa. 269; Tompkins v. Merriman et al., 155 Pa. 440; Shapley v Light, 26 D. & C. 505.

Parol evidence is not admissible to show that testator considered himself the owner, and that he intended to do that which he had no legal right to do: Tompkins v. Merriman, supra; 1 Jarman on Wills (7th Ed.) 519.

It is common practice to dispose of property by deed of trust and by will to the same beneficiaries, and they should not be bound by the acquiesence or participation of settlor-testator in a breach of trust where the will is silent as to his intentions. Equitable election must be based on the will itself, and it is not too much to ask that a testator in his will state clearly what he means. It would have been easy for him to include a clause of condition and forfeiture, which he did not.

There is no duty on the part of the remaindermen under the deed who were also money legatees under the will to make an election.

This conclusion would make unnecessary further discussion of the question of election, but for the sake of the record attention should be given to the exceptions filed by the issue of the deceased remaindermen, who contend that in any event they are not required to elect. Two of the remaindermen died before life tenant, leaving issue. Under the terms of the deed the interests of the remaindermen were contingent, and their issue substituted. The deed gives principal at the death of life tenant "equally, share and share alike, unto such nephews and nieces of Grantor as may be

living at that time and issue of deceased nephews and nieces of Grantor, the issue of any deceased nephews and nieces of Grantor taking their parents' shares, per stirpes upon the principle of representation."

The trustee contends that the issue, as representatives of their parents, are bound by the doctrine of election just as fully as the parents themselves would have been if they had survived the termination of the trust, citing Callery's Estate, 333 Pa. 258. There a legacy was given to a son who was indebted to testator. The son predeceased, and under the Wills Act of June 7, 1917, sec. 15(a), P. L. 403, the legacy was saved from lapse and passed to the son's issue. It was held that the executor had a right to set off against the legacy the amount of the son's debt, because in the words of the statute the issue took "with like effect as if such devisee or legatee had survived the testator."

The doctrine of election has no practical application to these facts. The legacies were accepted by the parents many years ago without knowledge they were making an election. The issue received nothing under the will, yet it is suggested they refund what their parents received. The interests of parents and issue were not identical. Only the parents were legatees. Both parents and issue were remaindermen, and their remainders existed concurrently. It is difficult to see how the parents, the primary remaindermen who had but contingent interests, could elect without the consent of their issue, who were also remaindermen. To so hold would give the primary remaindermen the power to use the remainder for their own benefit.

This we believe would be an unwarranted extension of the doctrine of election, and Callery's Estate, supra, as to lapsed legacies has no application.

The further contention is made by the trustee that testator intended the pecuniary legacies to constitute

satisfaction of whatever liability arose from his withdrawing the $66,580.50 of securities from the deed.

The rule is said to be that whenever a person by his will gives a legacy as great or greater than the debt which he owes to the legatee, such legacy shall be a satisfaction of the debt. It is also stated, however, that the rule is not founded on reason and courts of justice will lay hold of slight circumstances to get rid of the rule: Byrne v. Byrne, 3 S. & R. 54.

In Schoenberg's Estate, 5 Dist. R. 165, Judge Penrose states that one of the requirements for the application of the doctrine is that the legacy must be demandable at the same time as the debt. Here the legacy was demandable at the death of testator many years ago. Payment of the surcharge was not demandable until the death of life tenant under the deed of trust, which has recently occurred. Furthermore, the remaindermen under the deed of trust had contingent interests—they might be creditors and they might not. The legacy must not be contingent or uncertain: Byrne v. Byrne, supra; Wesco's Appeal, 52 Pa. 195; Horner v. McGaughy, 62 Pa. 189; Kendrick's Estate, 3 Dist. R. 402. These seem to be more than "slight circumstances" which would prevent the application of the rule suggested.

Extrinsic evidence is not admissable to show that the intention of testator in giving the legacies was to pay the debt: Dembinski's Estate 316 Pa. 61, 64.

In our opinion the legacies were not in satisfaction of the debt. Furthermore, the only persons who might have made this contention were the residuary legatees at the time of testator's death. For the reasons given in this opinion with respect to the doctrine of election, we believe that this defense is not available to the trustee, a stranger to the will.

Exceptions have been filed by the trustee in support of the contention that the deed of trust should be

reformed in accordance with a written "Statement of Intent" signed by settlor, whereby he declared that it was and always had been his intent that the ultimate beneficiaries under the deed "shall have no interest of any kind whatsoever in the corpus or principal of the trust" prior to the time it shall be paid over to them, and that securities might be substituted of different values.

This "Statement of Intent" was signed contemporaneously with the fifth of the six exchanges, which was eight years after the date of the deed. It was clearly an afterthought, and the auditing judge properly excluded it as evidence.

The deed in its express terms is declared to be irrevocable by settlor, and as stated by the auditing judge there is no ambiguity which would warrant the admission of extrinsic evidence tending to work a partial revocation. When a settlor does not reserve power to modify a trust it cannot be amended without the consent of the beneficiaries: Donnan's Trust Estate, 339 Pa. 43; Thompson et al. v. FitzGerald et al., 344 Pa. 90.

We are in disagreement with learned counsel for exceptants with respect to the amount of the surcharge which should be imposed.

In 1923 settlor voluntarily added securities of a value of $7,000 to the trust. Six exchanges of securities were made between the trustee and settlor. By reason of the first exchange the trust profited to the extent of $9,175. The five subsequent exchanges resulted in losses to the trust in an aggregate of $66,580.50. Exceptants contend that each transfer constituted a separate breach of trust and therefore the trustee cannot reduce the amount of his liability by deducting the amount of the gain on the first exchange or the later contribution made by settlor. They cite in support of their position A. L. I. Restate-

ment of the Law of Trusts, section 213 and Cuyler's Estate, 5 D. & C. 317.

The trust in the present case was voluntarily created by settlor with his own funds. He assumed that he had the right to call back an irrevocable gift. In our opinion, all of the exchanges of securities, as well as the voluntary additions made to the trust by settlor, should be regarded as one continuous transaction or course of conduct. All that these exceptants can reasonably and fairly expect is that the corpus of the trust be made whole as first created.

We therefore conclude that, in ascertaining the gross amount upon which the surcharge is to be based, not only the gain of $9,175 resulting from the first exchange but also the voluntary contribution of $7,000 must be deducted from the total losses of $66,580.50 resulting from the five later exchanges. This computation results in a net loss or reduction in value of $50,405.50, which is the amount upon which the surcharge is to be calculated.

The auditing judge inadvertently awarded the income which has accrued after the death of life tenant, Leonore P. Kane, to the testamentary trustees of settlor rather than to the remaindermen who became entitled to the distribution of principal. The exceptions filed to this award should be sustained, and the accrued income awarded to those entitled to the principal of the trust.

The exceptions of the trustee are dismissed. Exceptions of the remaindermen nos. 1 to 13 inclusive are sustained to the extent that the trustee is surcharged with the sum of $50,405.50, and exceptions nos. 14 to 16 inclusive, which relate to the award of income accruing after the death of life tenant, are sustained. The adjudication, as thus modified, is confirmed absolutely.

Judge Bolger dissents.