MAINSOURCE BANK, Appellant–Petitioner,

v.

In the Matter of the Unsupervised ESTATE OF Nicholas R. HERMANN, Deceased, Eva Hermann, Appellee–Respondent.

No. 16A05–0505–CV–244.

Court of Appeals of Indiana.

Feb. 28, 2006.

Matthew D. Bailey, Greensburg, for Appellant.

Don Hubert Wickens, Wickens & Wickens, Greensburg, for Estate of Nicholas Hermann.

Frank I. Hamilton, Jr., Hamilton & Tebbe Law Office, P.C., Greensburg, for Eva Hermann.

## OPINION

MAY, Judge.

MainSource Bank appeals the trial court's decision to exclude real estate owned by Eva Hermann ("Eva") and her husband, Nicholas Hermann ("Nicholas"), as tenants by the entireties, from Nicholas' estate. Mainsource raises one issue, which we restate as whether the trial court erred in declining to apply the doctrine of equitable election. We affirm.

### FACTS AND PROCEDURAL HISTORY

On January 18, 1994, Nicholas executed his will, which provided in relevant part:

I, NICHOLAS R. HERMANN, of Decatur County, Indiana, declare this to be my Last Will and Testament and revoke all prior wills and codicils.

ITEM 1. I will that all my legal debts be promptly paid.

ITEM 2. I give my jewelry, photographs, household furnishings, yard equipment, and any automobiles to my wife, Eva Hermann.

ITEM 3. I give my guns and stamp collection to my son, John James Hermann.

ITEM 4. I give one-half (1/2) of the residue of my estate to my wife, Eva Hermann. My wife shall receive the home in which we are living at the time of my death as part of her one-half (1/2) of the residue of my estate. If my wife shall predecease me, I give all of my estate to the Union Bank & Trust of Greensburg, Indiana, in trust as provided in ITEM 5.

ITEM 5. I give one-half (1/2) of the residue of my estate in trust to the Union Bank & Trust Company of Greensburg, Indiana, or its successor.[1] The trust shall be held and administered as follows:

(a) The Trustee shall pay the trust income to my son, John James Hermann at least annually. The Trustee shall distribute the principal of the trust to John James Hermann ten (10) years after the date of my death.

(App. at 9–10) (footnote added).[2]

When the will was executed, Nicholas and Eva lived in a house Nicholas owned. That house was later sold. On December 16, 1996, Nicholas and Eva as tenants by the entireties purchased a house in Greensburg, Indiana ("the house").

After Nicholas died on January 18, 2003, Eva transferred the house to her name alone as she was the surviving entireties

---

1. MainSource Bank is the successor in interest to Union Bank & Trust Company.

2. The remainder of the will sets out the terms of the trust and names Eva the personal representative of the estate.

owner. On February 11, 2003, Nicholas' estate was admitted to probate and Eva was named personal representative. Under the terms of the will, the Nicholas R. Hermann Trust ("the trust") was established for the benefit of John Hermann and personal property was distributed pursuant to Items 2 and 3 of Nicholas' will.

On November 4, 2004, Eva sought to close the estate. MainSource, as trustee for the trust, objected to Eva's verified closing statement. MainSource alleged that in "calculating distribution of the residue of the estate, [Eva] failed to include the value of [the house] as required by the Doctrine of Equitable Election." (*Id.* at 67.) The value of the house, MainSource argued, "should have been included as part of [Eva's] distribution pursuant to Item 4 of [Nicholas'] Last Will and Testament." (*Id.*) The trial court overruled MainSource's objection, concluding it did not "find beyond a reasonable doubt that Nicholas Hermann intended to dispose of his wife' [sic] real estate, thereby forcing her to make an election." (*Id.* at 4.)

### DISCUSSION AND DECISION

■ Although neither party requested specific findings, the trial court stated it could not find beyond a reasonable doubt Nicholas intended to dispose of Eva's real estate and, as a result, concluded as a matter of law she was not required to make an election.

■ "*Sua sponte* findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). When a trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Freese v. Burns*,

771 N.E.2d 697, 700 (Ind.Ct.App.2002), *trans. denied.* In deference to the trial court's proximity to the issues, we disturb its judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id* at 700–01. We do not defer to conclusions of law, however, and evaluate them *de novo.* *Id* at 701.

■ MainSource argues the trial court did not properly apply the doctrine of equitable election. We have described the doctrine of equitable election as follows:

The doctrine of election is of equitable origin, and is universally recognized in this country and England. There can be no election unless the testator confers some benefit upon the devisee, and by the terms of the will assumes to dispose of some right of the latter. Election consists in the exercise of the choice thus offered the devisee, of accepting the devise and surrendering that right of his which the will undertakes to dispose of, or retaining such right and rejecting the devise. He cannot have both. If he elects to take under the will, he is bound to give effect to all of its provisions, and perform the burdens attached to his benefit. If one conveys land to A. as a gift, and by the same instrument, or as a part of the same transaction, gives A.'s horse and carriage to B., A. is required to elect whether he will accept the land and give up his horse and carriage, or retain them and reject the land. If he accepts the benefit, he is estopped to deny the donor's right to dispose of his horse and carriage, and by such acceptance the title to the chattels at once vests in B.

*Citizens Nat'l Bank of Whitley County v. Stasell*, 408 N.E.2d 587, 590 (Ind.Ct.App.

1980) (quoting *Moore v. Baker,* 4 Ind.App. 115, 118, 30 N.E. 629, 629–30 (1892)), *reh'g denied* 415 N.E.2d 150 (Ind.Ct.App.1981). The doctrine rests on the principle that "no person will be permitted to hold under a will and at the same time to hold against its provisions." *Young v. Biehl,* 166 Ind. 357, 360, 77 N.E. 406, 407 (1906). The beneficiary must, therefore, elect between the two options presented by the will.

■ In *Stasell,* we identified the five elements of the doctrine of equitable election. First, the testator must intentionally dispose of the property in issue. Second, the testator must have no testamentary power over the property in issue. Third, the will itself must put the beneficiary on notice of the need to make an election. This notice must appear in the will "beyond a reasonable doubt." *Stasell,* 408 N.E.2d at 592. Fourth, the owner of the property in issue must be the beneficiary of other property under the testator's will. Fifth, the beneficiary must accept other property under the testator's will.

The second, fourth and fifth elements of the *Stasell* test are clearly satisfied. Because Eva and Nicholas owned the house as tenants by the entireties, the house passed to Eva in fee simple at Nicholas' death and thus Nicholas had no testamentary power over the house. Eva was a beneficiary of various personal items under Item 2 of the will and of one-half of the residue of the estate under Item 4. Finally, the inheritance tax return for the estate indicates Eva accepted other property under Nicholas' will.

■ In considering whether Nicholas intentionally disposed of Eva's property, we first note "a *prima facie* presumption that the testator intended to dispose only of his own property in considering whether a will purports to dispose of property owned by a devisee or legatee thereunder." *Id.* at 591. We are guided by *Mil-*ler v. Smith, 79 Ind.App. 1, 132 N.E. 607 (1921), *reh'g denied, trans. denied; Hoff v. Hoffman,* 99 Ind.App. 317, 192 N.E. 329 (1934); and *Ragsdale v. Robinson,* 219 Ind. 335, 38 N.E.2d 570 (1942).

In *Miller,* Husband and Wife owned property by the entireties, which was titled in their names after Husband executed his will. Husband devised "all my real estate that I may have at the time of my death" to Wife as a life estate with the remainder to his children. 79 Ind.App. at 2, 132 N.E. at 607. Wife later sought to quiet title in the entireties property. We discussed equitable election and noted:

> It follows that if from the will [of Husband] it is clear beyond a reasonable doubt that the husband intentionally assumed to dispose of all the real estate which at the time of his death might be held by himself and wife as tenants by entireties, then the judgment [for Husband's children] must be affirmed; otherwise the contention of [Wife] must prevail.

*Id.* at 4, 132 N.E. at 608. Husband's will did not specifically describe the entireties property and, by operation of law, Husband no longer had the entireties property. We accordingly held Husband did not clearly intend to dispose of the entireties property in his will. *Id.* at 4–5, 132 N.E. at 608.

In *Hoff,* Husband owned eight acres in fee simple. Husband and Wife owned by the entireties an additional fifty-five acres in two parcels. Husband devised "all the real estate of which I may be possessed at the time of my death" to Wife as a life estate with the remainder to Daughter. 99 Ind.App. at 318, 192 N.E. at 330. In an action to quiet title in the fifty-five acres, we noted the will did not "describe . . . or even refer to" the fifty-five acres held by the entireties and thus could refer only to

the eight acres held by Husband in fee simple. *Id.* at 320, 192 N.E. at 331. Again, we held Husband did not clearly intend to dispose of property held in the entireties with Wife. *Id.* at 320, 192 N.E. at 331.

In *Ragsdale,* Husband owned 140 acres in fee simple. Husband and Wife owned by the entireties an additional eighty acres. The eighty acres was contiguous to the 140 acres and Husband operated the 220–acre tract as a single farm. Husband devised "to my brothers in equal shares my farm . . . subject to the life interest of my said mother and wife [in the rents and profits of the farm]." 219 Ind. at 338, 38 N.E.2d at 571. When the executor of Wife's estate sought to sell the eighty acres, the brothers claimed title to the entire 220 acres. Our Indiana Supreme Court noted the "words 'my farm,' aptly and appropriately describe this 140–acre tract which [Husband] owned and over which he had the power of disposal, and under the rules the *prima facie* presumption is that he intended to dispose of the 140 acres only." *Id.* at 342, 38 N.E.2d at 573. Because "there is nothing in the will from which it appears that [Husband] assumed to dispose of his wife's separate 80 acres," the Court held the doctrine of equitable election did not apply. *Id.* at 343, 38 N.E.2d at 573.

Nicholas' will provided Eva would receive "the home in which we are living at the time of my death as part of her one-half (1/2) of the residue of my estate." (App. at 9.) As in *Miller, Hoff* and *Ragsdale,* the will did not clearly express Nicholas' intent to dispose of property he and Eva owned in the entireties. Nor does the language of Nicholas' will require us to assume he intended to dispose of the house

*regardless of its ownership.* In light of the presumption Nicholas intended to dispose only of his own property and absent clear evidence to the contrary, we decline to read such an intent into Nicholas' will. *See Stasell,* 408 N.E.2d at 591; *Miller,* 79 Ind.App. at 4–5, 132 N.E. at 608. Accordingly, the trial court did not err in finding Nicholas did not intend to dispose of the entireties property in his will and in concluding the doctrine of equitable election does not apply in this case.[3] We affirm.

Affirmed.

KIRSCH, C.J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting.

The majority agrees with the trial court that the doctrine of equitable election does not apply in this case. I respectfully disagree.

The doctrine of equitable election creates an obligation upon a beneficiary under a will to "elect" between two inconsistent rights or claims which have been created by the will or by law. *McEwen v. McEwen,* 529 N.E.2d 355, 359 n. 4 (Ind.Ct.App. 1988). If a testator by his will assumes to dispose of the property of another person who is also made a beneficiary under the will, such person's acceptance of the will is a confirmation of its terms and estops such person from objecting to the disposition of his own property. *Id.* As the majority notes, there is a presumption that the testator intended to dispose of only his own property. Slip op. at 5 (citing *Stasell,* 408 N.E.2d at 591).

The majority concludes, based upon comparison with several cases, that the

---

**3.** Because Nicholas did not clearly intend to dispose of the house, we need not address whether "the will itself . . . put the beneficiary on notice that the beneficiary must make an election." *Stasell,* 408 N.E.2d at 592.

will does not clearly express Nicholas' intent to dispose of property he owned with Eva as tenants by the entireties. Giving due consideration to the presumption, I believe the language in Nicholas' will is far more specific than the language in any of the cases cited by the majority and the doctrine of equitable election should apply in this instance.

In *Miller*, husband and wife owned property by the entireties. The husband devised "all *my* real estate that *I* may have at the time of my death" to his wife. 132 N.E. at 607 (emphasis added). Because the entireties property was not specifically described in the will and because the property passed to the wife automatically at the time of the husband's death by operation of law, we held that equitable election did not apply. Likewise, in *Hoff*, husband and wife owned property by the entireties and husband also owned property in fee simple. The husband devised "all the real estate of which *I* may be possessed at the time of my death" to his wife. 192 N.E. at 330 (emphasis added). Because the will did not "describe ... or even refer to" the entireties property, it necessarily referred only to the fee simple property, and equitable election did not apply. *Id.* at 331. Finally, in *Ragsdale*, husband and wife owned eighty acres by the entireties. The husband owned an additional, contiguous 140 acres in fee simple, and he operated the entire 220 acres as a single farm. The husband devised "to my brothers in equal shares *my* farm ... subject to the life interest in my said mother and wife [in the rents and profits of the farm]." 38 N.E.2d at 571 (emphasis added). Our supreme court held that "my farm" described only the 140 acres husband owned in fee simple.

In each of the cited cases, the devise was somewhat generic and/or specifically referred only to property owned by the testator alone. Here, the bequest is very specific—"the home in which we are living at the time of my death"—and refers unmistakably to property owned by Nicholas and Eva by the entireties. Although Nicholas and Eva did not yet own the specific property at issue when Nicholas executed his will, and in fact, when the will was executed, the residence in which they resided was in Nicholas' name only, a will is ambulatory and does not operate until the testator's death. *Citizens Nat. Bank of Whitley County v. Stasell*, 408 N.E.2d 587, 591 (Ind.Ct.App.1980). Absent evidence to the contrary, a will is construed to include after-acquired property. *See* Ind.Code § 29–1–6–1(a) ("Any estate, right, or interest in land or other things acquired by the testator after the making of the testator's will shall pass as if title was vested in the testator at the time of making of the will."). In *Stasell*, we noted that "it logically follows from prior case law that ownership of the property at the time of the execution of the will is not relevant to the doctrine of election." *Id.* Moreover, a "testator's power to give necessarily includes the right to ... attach terms and conditions to the gift ...." *Dickey v. Citizens' State Bank of Fairmount*, 98 Ind. App. 58, 180 N.E. 36, 38 (1932). Under these circumstances, I believe the presumption is overcome, and it is clear from the will that Nicholas intended to dispose of Eva's property because the provisions of his will conflict with the terms of a tenancy by the entireties.

In *Young v. Biehl*, 166 Ind. 357, 77 N.E. 406 (1906), the husband's will devised a life estate to his wife in both property he owned in fee simple and property he owned by the entireties with wife, with the remainder in fee simple to his children. The husband lacked testamentary power to dispose of the entireties property in such a manner because by operation of law the property would pass to wife automatically on his death. However, the wife's

acceptance of the other beneficial provisions of the will confirmed and ratified the will as a whole, and the wife was equitably estopped from asserting title in fee to the entireties property. Rather, she had only a life estate in that property pursuant to the terms of the will.[4] *Id.* at 407. Just as the husband in *Young* devised by his will property that he did not own, so has Nicholas here. Under the doctrine of equitable election, Eva was required to either take the residence as it passed to her on Nicholas' death by operation of law and forego the other beneficial provisions of Nicholas' will, or forego her interest in the residence and take pursuant to the terms of the will. Because Eva took pursuant to the terms of the will, the value of the house should have been included in the value of the estate and then set aside to Eva as part of her one-half of the residue.

I would reverse the decision of the trial court.

---

4. Wife had actually purported to sell the entireties property and the action was brought by husband's children and remaindermen against the purchaser to quiet title. The ultimate holding was that the purchaser had no more interest in the land than the wife had to give—namely, a life estate. *Id.*