Cameron v. Parish.

## CAMERON v. PARISH ET AL.

[No. 18,825.   Filed June 8, 1900.   Rehearing denied Oct. 11, 1900.]

WILLS.—*Husband and Wife.—Separate Property of Wife.—Election by Wife.*—Where, by the terms of a will, testator gave all of his property to his wife, and provided therein that at the death of the wife "all of the property which she may then own" should be equally divided between his granddaughter and his foster son, such instrument did not present such a case as required the wife, under the equitable doctrine of election, to decide whether she would accept the benefits bestowed upon her therein, and thereby adopt the will as an entirety, and by such acceptance impliedly consent that property, owned and held by her at the time of her death under a deed of conveyance, should be subjected to the provisions of her husband's will, and at her death, as therein provided, should go in equal parts to the granddaughter and foster son.

From the Warren Circuit Court.   *Reversed.*

*C. V. McAdams,* for appellant.
*E. F. McCabe,* for appellees.

JORDAN, J.—Appellee instituted this action in the lower court against appellant to quiet his title to the undivided one-half of a certain tract of real estate situated in the town of Williamsport, Warren county, Indiana.   There was an answer in denial and a cross-complaint upon the part of the defendant.   The latter, by her cross-complaint, alleged that she was the owner in fee of the entire premises in dispute, and she sought thereby to quiet her title as against the plaintiff, appellee in this appeal.   Upon the issues joined under the pleadings there was a trial by the court, and a special finding of facts and conclusions of law thereon, to the effect that the appellee was the owner in fee of the undivided one-half of the premises described in the complaint, and was entitled to have his title quieted; and, over the exceptions of appellant to the court's conclusions of law upon the facts found, judgment was rendered accordingly.

The question presented is: Did the court err in its con-
clusions of law in favor of appellee upon the facts embraced
in the special finding? The pertinent and material facts
disclosed by the finding are substantially as follows: Wil-
liam Cameron, prior to the year 1889, had been a farmer,
and resided upon a farm, which he owned, in Warren
county. On October 1, 1889, he purchased the real estate
in controversy, paying therefor the sum of $2,100; and
caused it to be conveyed in fee simple to his wife, Matilda
Cameron. A short time after the purchase of said real
estate, he and his wife moved onto the same, and continued
to make their home thereon until the death of each. After
taking up their residence upon said land, William Cam-
eron purchased other real property in the town of Williams-
port of the value of $800, the title of which he took in his
own name, and continued to own and hold the same until
his death. He and his wife had one child, James Cameron,
who died in the year 1887, leaving surviving him as his only
child the appellant, Lena Frances Cameron, and at the
time of the execution by William Cameron of the will here-
inafter mentioned she and her grandmother, Matilda Cam-
eron, were the only heirs of the said William. The appellee,
George Parish, was taken by the said Cameron and his
wife, Matilda, into their family when he was a mere child,
and was made a member thereof, but was never in any man-
ner legally adopted as their child; and at the death of
William Cameron he was of the age of thirty-one years, and
was still residing with the said William and his wife as a
member of their family, and was not possessed of any prop-
erty or estate of any kind whatever. On October 10, 1891,
Matilda Cameron still owned the real estate in dispute,
which had been conveyed to her in 1889, as heretofore
stated, and continued to own the same until her death, but
was not the owner, on said October 10, 1891, of any per-
sonal property save and except her wearing apparel and
some household goods. On said date William Cameron was

the owner of personal property of the probable value of
$4,500, and he also owned ten acres of real estate situated
without the town of Williamsport, Warren county, Indiana,
of the probable value of $1,000, and was still the owner of
the real estate heretofore mentioned as being purchased by
him for the price of $800.   On the said October 10, 1891,
William Cameron executed his last will and testament.   By
said document he directed, first, that all of his just debts
and funeral expenses be paid by his executor as soon after
his death as possible.

The second and third clauses of the will are as follows:
(2)   "I give, devise, and bequeath to my beloved wife, Ma-
tilda Cameron, all my property, real and personal, of every
character and description, wherever the same may be sit-
uated, to use and dispose of as she may desire, with power
to sell and convey the same, or do with the same as she may
desire." (3) "At the death of my wife I will and direct that
all of the property which she may then own shall be equally
divided between my granddaughter, Lena Frances Cam-
eron, and my foster-son, George Parish, share and share
alike, except as herein otherwise provided to one acre of real
estate."

By the fourth clause he directed that, in the event his
said wife, Matilda, had not, during her life, disposed of the
one acre of land owned by him and situated near the Indi-
ana Mineral Springs—being the one acre mentioned in the
third clause of the will—then, and in that event, the title
thereto was to vest in his said grandchild, Lena Cameron,
her mother, Sue Cameron, and the said George Parish dur-
ing their lives, and at their death the title thereto was to
vest in fee simple in their surviving heirs.

The fifth clause of the will provided that, in case the said
Parish or the said Lena Frances Cameron died without
issue of their bodies, or either of them, alive, then the prop-
erty which they received from his wife at her death was to
go to and vest in George Cameron, his nephew, and Thomas

Moore, a nephew of his wife; it being provided therein that the said property in all cases should be responsible for the funeral expenses of his said wife before vesting in his said granddaughter and the said Parish, and also responsible for her debts.

On December 16th following the execution of the will, William Cameron died, leaving surviving him his wife as his widow, and his will was duly admitted to probate in the Warren Circuit Court; and C. V. McAdams, the executor therein named, duly qualified as such, and continued to administer his trust until he was regularly discharged as such executor on the 13th day of March, 1893.

The court finds that the said widow, Matilda, at no time after the death of her husband, filed any written election with any one to take her interest in her husband's property pursuant to the laws of Indiana in preference to the provisions of her husband's will, but that she elected to and did take all her husband's property under his said will. The executor, pursuant to the will, turned over to her money, household goods, and a decree of foreclosure to the amount of $2,334.21. From this sum the executor paid out, under directions from her, the sum of $55.19 on taxes due upon her real estate, and the further sum of $182.71 upon a school fund mortgage existing against her real estate at the time the same was purchased and conveyed to her.

It is further found by the court in its special finding that, after the death of William Cameron, his widow, Matilda, took possession of all the real estate of which he died the owner, and that she converted all the personal property turned over by said executor into cash, and loaned and used the same as she felt disposed; that she sold one piece of real estate owned by the testator at the time of his death, situated in the town of Williamsport, for the sum of $800, and caused a portion of the other lands, owned and held by her husband at his death, to be platted, and during her lifetime she disposed of sixteen other tracts or lots by warranty deed

made by her as widow of the testator, and received for such conveyances the sum of $730; and at the time of her death the real estate which she had acquired under the will of her husband remaining undisposed of by her was but the one acre of land heretofore mentioned, which was of the value of $150.

On the 13th day of July, 1898, Matilda Cameron died intestate, and the value of all the personal property then owned by her, all of which came to her under her husband's will, was $1,682.28, and consisted of household goods, horse and carriage, notes, and money. After her death, to wit, on July 20, 1898, appellant and appellee, out of the moneys on hand at her death, fully paid and settled all her debts and funeral expenses, which amounted to $293, leaving a residue of her personal estate amounting to $1,389.22, which was then and there equally divided between appellant and appellee. At the time appellant and appellee made the division of the property acquired by Matilda Cameron under her husband's will, and which remained undisposed of at her death, as heretofore stated, they each supposed that the title to the real estate in controversy in this action was in William Cameron at the time of his death, and, thereupon, acting under this supposition in regard to the title of said real estate, they leased the same to one Johnson for a term of one year at an agreed rent of $10 per month, one-half of which, by the terms of such lease, to be paid to each of them. And the said tenant took possession of the property, and has ever since held and is now in possession thereof pursuant to said lease.

A short time before the commencement of this suit, appellee, George Parish, discovered the fact that the title to said real estate had always been in Matilda Cameron from the time it was conveyed to her, as heretofore stated, up to the time of her death, and was never at any time owned by William Cameron; and thereupon he communicated the information to the appellant, Lena Frances Cameron, and de-

manded of her that she execute to him a deed of conveyance for one-half of said real estate, which she refused to do, but, on the contrary, asserted, and still asserts, her entire ownership to the said realty as the only surviving heir at law of her grandmother, Matilda Cameron; and has demanded of said tenant that all the rents of said real estate be paid to her. At the time William Cameron executed his will he was sixty-nine years old, and his wife, Matilda, was sixty-eight.

Upon the foregoing facts the court stated its conclusions of law as follows: (1) That the plaintiff, George Parish, is the owner in fee simple of the undivided one-half of the property in controversy, and is entitled to have his title quieted; (2) that the defendant, Lena Frances Cameron, is the owner in fee simple of the other half of said real estate, and is entitled to have her title thereto quieted.

Appellant asserts title to the entire premises involved in this action by virtue of inheritance as the sole heir of her grandmother, Matilda Cameron, while, upon the other hand, appellee claims title to the undivided one-half thereof under the provisions of the will of William Cameron. Counsel for appellant insists that under the second clause of the will in question, when tested by the doctrine asserted in the case of *John* v. *Bradbury,* 97 Ind. 263, the wife of the testator acquired but a life estate in the property devised thereby to her, with the power of disposing of the same during her natural life; that by the third clause it must be held that the testator intended that all the property which he devised to his wife under the previous clause remaining undisposed of at her death should go in equal parts to appellant and appellee; that, by the provisions of said third clause, the testator merely intended to direct in respect to the disposition of the property which his wife had acquired under his will, and which in whole or in part she might still own at the date of her death; and that said clause can not be interpreted so as to include other property owned by the

Cameron v. Parish.

wife at the date of her death. Counsel for appellee, upon the contrary, contends that by the clause "all the property which she may then own shall be equally divided," etc., as expressed in item three, the testator intended to embrace all of the property owned by his wife, without regard as to whether the same came to her through or under his will or was otherwise acquired and owned by her. Consequently, it is asserted that under the equitable rule the will presented a case for election upon the part of the testator's surviving wife; that she, as a beneficiary under the will, was by its provisions clearly required to decide whether or not she would accept the benefits or bounty conferred upon her by the will, or renounce the same *in toto;* that, having elected to accept or take the property which the testator donated to her, she must thereby be deemed to have adopted the will as an entirety, and consented that any and all property that she owned at the date of her death should be subjected to its provisions, and disposed of as therein directed.

That the second clause of William Cameron's will, standing alone, must be held, under the well settled principles of law so universally asserted and affirmed by our own decisions and other authorities in general, to have invested his wife with an absolute title to the property thereby devised to her, can not be successfully controverted. *Ross* v. *Ross,* 135 Ind. 367; *Rogers* v. *Winklespleck,* 143 Ind. 373; *Mulvane* v. *Rude,* 146 Ind. 476, and authorities there cited; *Rusk* v. *Zuck,* 147 Ind. 388; *Van Gorder* v. *Smith,* 99 Ind. 404.

In order to construe the will in controversy as creating a life estate only in the testator's surviving wife, with power of disposition over the property bequeathed to her, we would be required to extend the rule farther than it was carried by the decision in the case of *John* v. *Bradbury,* 97 Ind. 263. In *Goudie* v. *Johnston,* 109 Ind. 427, it was said that the former case possibly carried the doctrine too far. Certainly, however, it may be asserted that the

rule, as recognized and applied in *John* v. *Bradbury, supra,* is incompatible with the doctrine announced in the later cases of this court, especially in that of *Mulvane* v. *Rude,* 146 Ind. 476; and the John case must at least be considered as impliedly overruled by these later decisions. As the second clause of the will in effect gave to the testator's wife an absolute title in fee, consequently nothing remained of the estate from which a remainder over could be limited, as it is a well settled proposition that a remainder over can not be engrafted upon or carved out of a precedent absolute estate in fee. Therefore, so far as the testator may have attempted by the third clause of his will to limit the disposition of the property donated to his wife, and not disposed of by her during her life, such attempt under that clause must be held to be inoperative, and of no effect for that purpose. For the rule is well settled that where an estate, as under the will in this case, is generally and indefinitely given to a person with full power of disposition, in the absence in the will of an express mention to show that the estate given is limited to the life of the donee, it must be held that such devise of property carries with it a fee simple to the same, and any limitation over is inoperative or void by reason of its being repugnant to the principal devise. *Mulvane* v. *Rude, supra,* and authorities there cited.

The principal point, however, involved in this appeal does not depend upon the question as to whether Mrs. Cameron took a life estate or one in fee simple in the property bequeathed to her by her husband's will, but the real question presented is: Did that instrument, under its terms and provisions, present such a case as required her, under the equitable doctrine of election, to decide whether she would accept the benefits bestowed upon her therein, and thereby adopt the will as an entirety, and by such acceptance impliedly consent that the property in controversy, owned and held by her at the date of her death under a deed of conveyance, should be subjected to the provisions of her

husband's will, and, at her death, as therein provided, should go in equal parts to appellant and appellee? The doctrine of election, so far as it relates to wills and other instruments of donation, arises out of the equitable principle that a person shall not be permitted to accept under such instruments without giving all the provisions thereof full force and effect so far as such person is concerned. The doctrine of election, as between inconsistent rights and its application to wills, has long been established and is firmly settled by the authorities.

Story in his Equity Jurisprudence, §1077, in treating upon the subject, says: "In short, courts of equity, in such cases, adopt the rational exposition of the will, that there is an implied condition that he who accepts a benefit under the instrument shall adopt the whole, conforming to all its provisions and renouncing every right inconsistent with it."

The equitable doctrine is to the effect that a person can not be permitted to hold under a will and also to hold against its provisions; or, in other words, having once accepted beneficial interests under a will, he will be held to have confirmed and ratified every part thereof, and will not thereafter be permitted to interpose any right or claim of his own, however well founded it may be, which would defeat or in any manner prevent the full operation of such will. Where a person, under the terms of a will, has been thereby properly put to his election, and can be said to have elected to accept the benefits bestowed upon him by its provisions, he thereby binds or precludes, not only himself, but also those who claim through him, his representatives and heirs. *Wilson* v. *Wilson,* 145 Ind. 659. Of course, under the will in question, Matilda Cameron, as the widow of the testator, was, under §2666 Burns 1894, required to elect within the time therein fixed as to whether she would renounce the provisions made for her by her husband's will, and elect to be governed by the statute of descent in respect

to her rights in her husband's estate. As it does not appear that she, within the time stipulated by the statute, expressly rejected, in the manner therein provided, the provisions made for her by the will, her failure to do so must be considered the equivalent of an express election upon her part to abide by and accept the provisions of the will, and be controlled thereby in respect to her rights in her husband's estate.

It is settled that whenever it is reasonably clear that the provisions of a will are intended to be in lieu of the widow's interest in her husband's estate, under the law, if she accepts the former, she thereby waives the latter. *Burden* v. *Burden,* 141 Ind. 471; *Hurley* v. *McIver,* 119 Ind. 53; *Archibald* v. *Long, Ex.,* 144 Ind. 451. But, under the will in this case can it be held that Mrs. Cameron, by her election to adopt and abide by the provisions made for her therein, did anything more than to waive her rights and claims in and to her husband's estate, which she had and held under the law as his widow? Can it, in reason, be further said that by this election she bound herself to permit the real estate in dispute to pass under the operation of her husband's will, and go to the parties in this action, as therein provided? We are of the opinion that this latter , question must be answered in the negative. We are bound to assume, until the contrary clearly appears, that the testator, by his will, only intended to dispose of property subject under the law to his disposition, and, in order to create a proper case for election, under the equitable rule in question, his intention to dispose of property not his own must be made clearly to appear beyond a reasonable doubt from the will itself. It must be disclosed by such instrument that he therein assumed the power to dispose of the property of another person, who thereunder was also made a beneficiary. This feature of the doctrine of election, as settled by the authorities, is well stated by an eminent author as follows: "In order to create the necessity for an election,

there must appear upon the face of the will itself, or of the other instrument of donation, a clear, unmistakable intention, on the part of the testator or other donor, to dispose of property which is in fact not his own. This intention to dispose of property which in fact belongs to another, and is not within the donor's power of disposition, must appear from language of the instrument which is unequivocal, which leaves no doubt as to the donor's design; the necessity of an election can never exist from an uncertain or dubious interpretation of the clause of donation. It is the settled rule that no case for an election arises unless the gift to one beneficiary is irreconcilable with an estate, interest, or right which another donee is called upon to relinquish; if both gifts can, upon any interpretation of which the language is reasonably susceptible, stand together, then an election is unnecessary. The instrument may declare in express terms that the gift to A must be accepted by him in lieu of his own interest, which is thereby transferred to B, and then no possible doubt could exist. But this direct mode of exhibiting the donor's purpose is not indispensable. It is sufficient if the dispositions of the instrument, fairly and reasonably interpreted, exhibit a clear intention of the donor to bestow upon B some estate, interest, or right of property, which is not the donor's, but which belongs to A, and at the same time to give to A some benefits derived from the donor's own property. It is immaterial, however, whether the donor knew the property not to be his own, or erroneously conceived it to be his own; for in either case, if the intention to dispose of it clearly appears, the necessity for an election exists." 1 Pomeroy's Eq. Jur. §472.

In *Havens* v. *Sackett,* 15 N. Y. 365, on page 373 of the opinion, it is said: "It must be clear beyond all reasonable doubt that he [the testator] has intentionally assumed to dispose of the property of the beneficiary, who is required, on that account, to give up his own gift."

When tested by this rule, which is so fully affirmed and

sustained by the authorities, it is evident, we think, that the will in the case at bar does not come up to the requirement and clearly expose by its own provisions that the testator assumed the right to dispose of property owned by his wife and which she had in no manner acquired under or through his will. As previously said, the testator, under the second clause of his will, gave his wife an absolute and unconditional title in fee to all of his property, with the power to sell and do with the same as she might desire. It appears by the provisions of the third clause of his will that he supposed he had the power to control the disposition of the property which his wife held under and through the will undisposed of at the time of her death. That the testator, by the third item of his will, had in mind the disposition of the property only which he had devised to his wife under the previous clause is made more manifest by the exception in the latter of the one acre owned by him, and which in the fourth clause he states is situated near the Indiana Mineral Springs, and as to which, under this latter clause, he directs, in the event his wife shall not during her lifetime have disposed of this particular tract, that the title thereto at her death shall vest in the parties to this action, together with the mother of appellant, during their natural lives. This one acre tract, as the testator seems to have understood, had been devised by him under clause two of his will, along with his other property, to his wife; but as to it he appears to have desired that, if it was not disposed of by her during her life, it should go, not alone to the appellant and appellee, but that the mother of the former should have an interest therein. When this exception in clause three of the will is considered in connection with clause four, we think it becomes manifest that the testator, under an erroneous supposition as to his power to do so, intended only to direct the disposition, at the death of his wife, of the property then held by her under his will, and that the provisions of the clause can not be interpreted to have any reference to or embrace the particular property here involved.

Under these circumstances, the will did not present a case of election under the equitable rule to which we have referred, and the property involved in this appeal is not affected by the fact that Mrs. Cameron accepted the provisions made for her by her husband's will. It therefore follows, and we so conclude, that the premises in controversy in this action, under the facts found by the court, descended as an entirety to appellant, Lena Frances Cameron, as the sole heir at law of her grandmother, Matilda Cameron.

The court, therefore, erred in its conclusions of law in holding that appellee was entitled to the undivided one-half of said premises. The judgment is ordered to be reversed, and the cause remanded to the lower court, with instructions to restate its conclusions of law upon the facts found in favor of appellant to the effect that she is the owner of the premises described in the complaint and in the cross-complaint, and under the latter she is entitled to a judgment quieting her title against appellee to the real estate in question.