RAGSDALE ET AL. *v.* ROBINSON ET AL.

[No. 27,587. Filed January 13, 1942.]

*Fremont Miller,* of Franklin, and *S. C. Kivett, Sr., Joseph L. Kivett,* and *S. C. Kivett, Jr.,* all of Martinsville, for appellants.

*Neal & Williams,* of Indianapolis, *Claude Henry,* of Shelbyville, and *James M. Robinson,* and *Richard LaGrange,* both of Franklin, for appellees.

FANSLER, J.—The executor of the estate of Blanche M. Ragsdale filed a petition to sell real estate to pay debts. The appellants intervened and claimed title to the property under the will of Ira E. Ragsdale, their brother and the deceased husband of Blanche M. Ragsdale. They asserted this title in answers and in a cross-complaint. Demurrers to these pleadings were sustained, and these rulings are the basis of the errors assigned.

Ira E. Ragsdale made the following provisions in his will:

"Item 3. I give and bequeath to my Mother, Susan C. Ragsdale, one-half of the rents and profits of my farm during her life time.

"Item 4. I give and bequeath to my said wife one-half of the rents and profits of my said farm, and after the death of my said mother, I give and bequeath to my said wife all of the rents and profits of my said farm for and during the remainder of her life.

"Item 5. I give and devise to my said wife the home where we now reside in the City of Franklin. . . . "

"Item 7. I give and devise to my brothers in equal shares my farm located about four miles northwest of the said City of Franklin subject to the life interest of my said mother and wife. . . ."

It appears from the answers and cross-complaint that upon the death of Ira E. Ragsdale, his widow elected to take under the will; that she thereby took valuable personal property and a valuable home.

It is further alleged that at the time the will was executed, and at the date of the death of Ira E. Ragsdale, he owned in fee simple 140 acres of land located, as indicated in his will, about four miles northwest of the City of Franklin. Upon the said land there were buildings and equipment suitable for farming. At the same time, Ira E. Ragsdale and his wife, Blanche M. Ragsdale, owned as tenants by the entireties 80 acres of land adjoining and contiguous to the 140 acres above referred to. There was no dwelling or buildings of any consequence on this 80-acre tract. It is alleged that Ira E. Ragsdale used and operated the entire 220 acres as a single farm; that he furnished the money and paid the purchase price for the 80-acre tract; and that, in speaking of and referring to said farm of 220 acres, he always used the words, "my farm"; that "said farm was at all times operated by him as one

unit and was generally known as the 'Ira E. Ragsdale farm,' and always spoken of whenever referring to said 220 acres, by the said Ira E. Ragsdale, as 'my farm.' " It is further alleged that in executing his will, it was the intention of Ira E. Ragsdale to give and·devise ·to his brothers the entire 220 acres, subject only to a life estate in his mother and his wife.

It is contended by the appellants that Mrs. Ragsdale, having accepted the benefits of the will, title in her 80 acres vested in the brothers under the terms of the will.

The rule is well established that if a testator disposes of property not his own, and gives a benefit to the person to whom the property belongs, the devisee or legatee who elects to accept the benefits so given him must make good the testator's attempted disposition of such person's property. *Hartwig, Adm'r, et al.* v. *Schiefer* (1897), 147 Ind. 64, 46 N. E. 75; *Cameron* v. *Parish et al.* (1900), 155 Ind. 329, 57 N. E. 547; *Young* v. *Biehl et al.* (1906), 166 Ind. 357, 77 N. E. 406. The appellants rely upon this rule, and contend that, by his will, Ira E. Ragsdale disposed of the 80 acres, which he owned by entireties with his wife, to his wife and mother for their lives, with the remainder in fee to his brothers; that his wife elected to accept the benefits of the will, and therefore title to the 80 acres vested in the brothers.

In Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 2, it is said:

"The first and fundamental rule, of which all the others are little more than corollaries, is: In order to create the necessity for an election, there must appear upon the face of the will itself, or of the other instrument of donation, a clear, unmistakable intention, on the part of the testator or other donor, to dispose of property which is in fact not his own. This intention

to dispose of property which in fact belongs to another, and is not within the donor's power of disposition, must appear from language of the instrument which is unequivocal, which leaves no doubt as to the donor's design; the necessity of an election can never exist from an uncertain or dubious interpretation of the clause of donation. . . ." § 472, p. 349.

". . . Where, however, the subject-matter upon which the instrument operates is something in which the donor himself has a partial interest, and the donee has also a partial interest in it, or the residue of the property in it, and the language of donation is susceptible of a construction which would confine it to this partial interest of the donor, it is plain that a judicial interpretation is needed to ascertain the real intent. Under these circumstances, whenever the testator or other donor has a partial interest in the property dealt with, it is well settled that the courts will lean most strongly—as far as possible, it has been said —in favor of an interpretation which will confine his disposition to this his own interest,—an interpretation which will show an intention on his part to deal only by way of gift with his partial interest which he holds. In other words, the difficulty of establishing a case for an election, from the terms of a donation, is much greater where the donor has a partial interest in the property bestowed, than where he assumes to give an estate in which, as a matter of fact, he has no interest. [The presumption is that he intended to dispose of that which he might properly devise, and nothing more, and this presumption will always prevail unless the intention is clearly manifested by demonstration plain, or by necessary implication, on the part of the testator to dispose of the whole estate.]" § 473, pp. 351, 352.

"If the language of the donation is ambiguous, so

that its correct interpretation is at all doubtful, it is now a firmly established rule that parol evidence of ■ matters outside the instrument cannot be admitted for the purpose of showing an intent of the donor to dispose of property which he knew did not belong to him, and thus to create the necessity for an election. The intent of the donor to dispose of that which is not his ought to appear upon the instrument. . . . Of course, extrinsic evidence is always admissible in such cases, as well as in all others arising upon wills and deeds, in order to show the surrounding circumstances, the nature and situation of the property, the relations of the donor to the beneficiaries, and the like facts, which place the court in the shoes of the donor; but such evidence can go no further." § 473a, p. 353.

". . . *Prima facie* a testator is presumed to have intended to bequeath that alone which he owned,—that only over which his power of disposal extended. Wherever, therefore, the testator does not give the whole property *specifically,* but employs *general words* of description and donation, such as 'all my lands,' and the like, it is well settled that no case for an election arises, because there is an interest belonging to the testator to which the disposing language can apply, and the *prima facie* presumption as to his intent will control. . . ." § 489, p. 379.

These rules are everywhere concurred in and are not disputed here.

In *Miller* v. *Springer et al.* (1871), 70 Pa. 269, 274, it is said: "In like manner the learned judge erred in his charge, in referring to the fact that the property in dispute was claimed by Mrs. Skiles in her lifetime, and that she died in possession. It is evident, according to the authorities, that this was insufficient to put a legatee to his election who was not informed by the

will itself that the testatrix had undertaken therein to dispose of his property as her own."

In *Gray et al.* v. *Williams et al.* (1902), 130 N. C. 53, 55, 56, 40 S. E. 843, the rule is thus announced: "One of these rules of law is, and must be, that before a donee can be put to an election, his own property which is professed to be conveyed must be, as to its identification, described in the instrument itself with sufficient and legal certainty as that the donee may know his own property from that description. If the rule were otherwise, and parol testimony permitted to ascertain and describe the property of the donee, it would be unsafe to take benefits under instruments of gift, especially under wills.

"In the case before us, it would be impossible to show that the tract of land described in the complaint was the one attempted to be devised in the will without the aid of parol evidence. Does the rule apply to a widow when she is donee? The rule must be universal. There is no presumption against a donee because she may be the widow. But, on the other hand, there 'is a *prima facie* presumption, always, that a testator means only to dispose of what is his own and what he has a right to give.'"

Authorities might be multiplied, but we find no disagreement in the cases.

Ira E. Ragsdale owned a farm of 140 acres, complete with buildings and equipment, at the time his will was made and at the time of his death. The words, "my farm," aptly and appropriately describe this 140-acre tract which the testator owned and over which he had the power of disposal, and, under the rules, the *prima facie* presumption is that he intended to dispose of the 140 acres only. There is nothing in the will that points in any other direction.

It is clear from the pleadings that the appellants seek to rely upon parol evidence for the purpose of explaining the otherwise unambiguous language of the ■ will, and to show that the testator in speaking of the 220 acres, referred to it as "my farm"; in other words, to prove, as in *Miller* v. *Springer et al., supra,* that the 80-acre tract was claimed by the testator in his lifetime and that he died in possession of it. Such evidence is inadmissible, but if admissible it would not establish the appellants' case. The testator owned the 140 acres. He and his wife owned the 80 acres as tenants by the entireties, so that each owned all of it. When he spoke therefore of the 220 acres as his farm, it was in truth so, for he owned all of it notwithstanding his wife also was a fee-simple owner of 80 acres of it. But the fact that he thus spoke is no evidence that he believed he was entitled to make testamentary disposition of anything more than the 140 acres, or that, by the words, "my farm," as used in his will, he intended to describe any more than that over which he had power of testamentary disposal.

It was said in *Young* v. *Biehl et al., supra* (page 359 of 166 Ind., page 407 of 77 N. E.) : "It must be made clear by the will beyond all reasonable doubt that the husband intentionally assumed to dispose of his wife's real estate before she can be held, by her election to take under such will, to have bound herself to permit such property to pass under its operations."

There is nothing in the will from which it appears that Ira E. Ragsdale assumed to dispose of his wife's separate 80 acres.

Judgment affirmed.

NOTE.—Reported in 38 N. E. (2d) 570.