CITIZENS NATIONAL BANK OF WHITLEY COUNTY, and Giovanna Martin, Appellant (Plaintiff Below),

v.

Leonard STASELL et al., Appellee (Defendant Below).

No. 3–280A61.

Court of Appeals of Indiana, Third District.

Aug. 14, 1980.

John S. Bloom, Bloom, Bloom & Fleck, Columbia City, for appellant.

Jeanne S. Miller, Miller & Miller, New Haven, for appellee.

STATON, Judge.

The appellants, Citizens National Bank of Whitley County and Giovanna Martin, appeal a negative judgment to the quiet title action and accounting for rents and profits instituted in the court below. Appellants urge the following issues for our review:

(1) Whether the trial court properly applied the doctrine of equitable election;

(2) Whether the trial court required the correct burden of proof with respect to the doctrine of equitable election;

(3) Whether the trial court properly construed the will of Eva Martin; and,

(4) Whether the introduction of certain evidence was proper.

We affirm.

## I.

### Facts

This Court, recognizing the plethora of evidence contained in the record, lists only those facts pertinent to the resolution of the issues herein raised. Eva Martin, her sister Inez Smith, and her two brothers, Leonard Stasell and Harold Stasell, inherited as tenants in common a 240 acre farm upon the death of their mother in 1950. At that time Eva Martin was married to Charles Martin and remained married to him until her death in 1952. Eva Martin, her sister and two brothers, agreed to a voluntary partition of the farm which was to be effected through the use of a strawperson, Josephine Fogel. Eva Martin was to receive the 60 acre tract of land here in dispute with Harold and Leonard Stasell to receive the balance of the 240 acres and Inez Smith to receive cash.

On August 27, 1951, the four cotenants transferred all of their interest in the farm to Josephine Fogel by quitclaim deed clearly marked: "This deed is made for the sole purpose of reconveying said real estate by the grantee herein." On September 17, 1951, Eva Martin executed a will devising "the 60 acres of land which came to me by descent from my deceased mother . ." to Charles Martin (her husband) for life with the remainder to the children of her brothers and sister. Eva Martin's will left the residue of her estate to her husband Charles Martin.[1] One week after the execution of the will, on September 24, 1951, Josephine Fogel—as strawperson-grantor—conveyed the 60 acres here in dispute to Charles Martin and Eva Martin as husband and wife. Eva Martin died one year later on September 16, 1952.

Pursuant to an agreement made before her death, Eva Martin's brothers, Harold and Leonard Stasell, farmed the 60 acres then held by Eva and Charles Martin. After Eva Martin's death her brothers (and after their retirement another defendant-appellee) continued to farm the 60 acres according to the terms of the same agreement and sent a portion of the net proceeds to Charles Martin. This arrangement continued until, approximately, the commencement of this action in the court below (April 22, 1977).

In 1961 Charles Martin married Giovanna Martin (plaintiff-appellant) to whom he remained married until his death on July 20, 1975. The Citizens National Bank of Whitley County (plaintiff-appellant) was appointed the personal representative of Charles Martin's estate. The plaintiffs-appellants (hereinafter referred to, where appropriate, as Bank) instituted an action in the trial court below to quiet title in the 60 acres in Giovanna Martin and for an accounting of rents and profits. The defendants-appellees in this action are the sister and brothers of Eva Martin, Inez Smith and Harold and Leonard Stasell, and their children (hereinafter referred to collectively as Stasell). The trial court, applying the doctrine of equitable election, quieted title to the 60 acres in Stasell.

---

1. All parties relevant to this appeal stipulated in pretrial "STIPULATION OF FACT # 6" that "Charles W. Martin accepted substantial benefits in the form of real and personal property pursuant to the residuary clause of the last will and testament of Eva E. Martin, dated September 17, 1951. . . ."

## II.

### Doctrine of Election

Because of the interdependence of the issues and the *reasoning required in their* resolution, we consolidate Bank's first three allegations of error and state them as follows: With respect to the doctrine of election, the trial court erred in its interpretation of Eva Martin's will, its application of the doctrine, and in the *burden of proof* required of Stasell.

■ The doctrine of equitable election with respect to wills is an obligation imposed upon a beneficiary under a will to "elect" between two inconsistent rights or claims which have been created by the will or by law. *See Johnson v. Hicks* (1952), 231 Ind. 353, 108 N.E.2d 129; *Ragsdale v. Robinson* (1942), 219 Ind. 335, 38 N.E.2d 570; *Young v. Biehl* (1906), 166 Ind. 357, 77 N.E. 406; *Cameron v. Parish* (1900), 155 Ind. 329, 57 N.E. 547; *McGahan v. National Bank of Logansport* (1972), 151 Ind.App. 658, 281 N.E.2d 522; *Miller v. Smith* (1921), 79 Ind. App. 1, 132 N.E. 607; 97 C.J.S. Wills §§ 1237 et seq. (1956). If a testator by his will assumes to dispose of the property of another person who is also made a beneficiary under the will, such acceptance is a confirmation of the terms of the will and operates to estop such person from objecting to the disposition of his own property. *Miller, supra. See Ragsdale, supra; McGahan, supra.* As stated by the Court in *Moore v. Baker* (1892), 4 Ind.App. 115, 118, 30 N.E. 629, 629–30:

> "The doctrine of election is of equitable origin, and is universally recognized in this country and England. There can be no election unless the testator confers some benefit upon the devisee, and by the terms of the will assumes to dispose of some right of the latter. Election consists in the exercise of the choice thus offered the devisee, of accepting the devise and surrendering that right of his which the will undertakes to dispose of, or retaining such right and rejecting the devise. He cannot have both. If he elects to take under the will, he is bound to give effect to all of its provisions, and

perform the burdens attached to his benefit. If one conveys land to A. as a gift, and by the same instrument, or as a part of the same transaction, gives A.'s horse and carriage to B., A. is required to elect whether he will accept the land and give up his horse and carriage, or retain them and reject the land. If he accepts the benefit, he is estopped to deny the donor's right to dispose of his horse and carriage, and by such acceptance the title to the chattels at once vests in B. . . ."

The doctrine of election rests upon the equitable principle that one who claims property under the terms of a will must acknowledge the equitable rights of others under the same instrument. *Miller, supra.* In *Young, supra,* the Court stated:

> "If a legatee or devisee voluntarily accept the beneficial provisions of a will, he must be held to have ratified and confirmed every part of it, and thereafter cannot be permitted to assert any inconsistent right or claim, however well founded, which would defeat the full operation of such will. . . ."

166 Ind.App. at 360, 77 N.E. at 407. Pomeroy argued:

> "I venture the assertion that the only true basis upon which the doctrine can be rested is . . . the grand principle that he who seeks equity must do equity. This principle has ordinarily been regarded simply as furnishing a guide to the courts in their apportionment of equitable relief among the parties in a great variety of cases; but, . . . it is also the undeniable source of certain distinctively equitable doctrines. There is no doctrine more unmistakably and completely derived from this grand principle than that of election. The whole theory and process of election is a practical application of the maxim, He who seeks equity must do equity. A party asserts his claim to certain property; in order that he may obtain any relief, he must acknowledge and make provision for the equitable rights of other parties derived from the same instrument, and to that end must make his election, so that in

either choice those rights shall be preserved. The very election which he is obliged to make consists in the 'doing equity' to others which the principle demands. . . ." (Footnote omitted). 2 Pomeroy's Equity Jurisprudence § 465, p. 339 (5th ed., 1941).

■ In Indiana, the Courts recognize a prima facie presumption that the testator intended to dispose only of his own property in considering whether a will purports to dispose of property owned by a devisee or legatee thereunder. *Ragsdale, supra; Cameron, supra*. Where an election has been created, however, the testator's intent must be given effect so as to require an election. *Young, supra; McGahan, supra*. The basic requirement essential to the creation of an election is an intentional disposition of another's property; *McGahan, supra*, and it is a well established rule that the will must put the devisee or legatee on notice that he must make the election. *Johnson, supra; Ragsdale, supra; McGahan, supra*. This "notice" of the testator's intent must clearly appear beyond a reasonable doubt from the will itself. *Johnson, supra; Ragsdale, supra; Young, supra; Cameron, supra; McGahan, supra*.

■ Both parties in this appeal go to great length arguing the issue of ownership of the 60 acres at the time of the execution of Eva Martin's will since the legal title to this land rested in the strawperson, Josephine Fogel. In fact, Bank states in its brief:

"The controversy regarding the application of law and fact to the instant case is properly reduced to one issue: Who was the beneficial owner of the real estate on the date that Eva Martin drew her will, September 17, 1951?"

These arguments are without weight, however, because ownership of property at the time of the execution of the will creating the election is not relevant to the application of the doctrine of election.

■ First, it is a well settled rule that a will, by its very nature, is ambulatory and does not operate until the death of the testator. *Farmers & Merchants State Bank v. Feltis* (1971), 150 Ind.App. 284, 276 N.E.2d 204; *Lawrence, et al. v. Ashba, et al.* (1945), 115 Ind.App. 485, 59 N.E.2d 568. Secondly, although never specifically decided, it logically follows from prior case law that ownership of the property at the time of the execution of the will is not relevant to the doctrine of election.[2] It bears repeating that:

"The basic requirement essential to the creation of an election is an intentional disposition of another's property and the same must be made clear beyond a reasonable doubt. . . ."

*McGahan, supra*, 151 Ind.App. at 663, 281 N.E.2d at 525. And, as stated by the Indiana Supreme Court in *Young, supra*, with respect to entireties property devised by the husband:

"It must be made clear by the will beyond all reasonable doubt that the husband intentionally assumed to dispose of his wife's real estate before she can be held, by her election to take under such will, to have bound herself to permit such property to pass under its operations. In this regard there is no room to doubt the intention of the testator, since his will makes unqualified and complete disposition of the title to the land by accurate and specific description. *It is immaterial whether the testator erroneously believed the property to be his own, or knew the contrary, as in either case, if the intention to dispose of it clearly appears, the principle of election applies.* 11 Am. and Eng.Ency.Law (2d ed.), 68." (Emphasis added.).

166 Ind. at 359–60, 77 N.E. at 407. Similarly, as succinctly stated by Pomeroy:

"It is immaterial, however, whether the donor knew the property not to be his

---

2. All previous cases decided in Indiana have faced only the issue of whether the testamentary language was specific enough to establish that the testator *intentionally* disposed of the property in issue. *See, e.g., Young, supra* (where the Court found the property described sufficiently in the will to infer intentional disposition); *Ragsdale, supra* (where the Court found the testamentary language to be insufficient to find intentional disposition).

**592**

own, or erroneously conceived it to be his own; for in either case, *if the intention to dispose of it clearly appears, the necessity for an election exists.*" (Emphasis added.)

2 Pomeroy's Equity Jurisprudence § 472, pp. 350–51 (5th ed., 1941) (quoted with approval in *Cameron, supra*). It follows, therefore, that it is not ownership at the time of the execution of the will, but the *intent* of the testator to specifically dispose of the property in issue by the will that is relevant.

It necessarily follows from the definition of the doctrine of election that the property must belong to one other than the testator at the time the "election" is to be made—otherwise, no election would be required. Thus, combining these two elements of *intent* and *another's property*, the creation of an "election" situation can be stated: The testator must have intentionally disposed of the property in issue *and* the testator must have no testamentary power over the property in issue. The issue of who owns the property at the time of the execution of the will is not relevant.

 In summary, the essential requirements for the application of the doctrine of election is listed as follows:

(1) the testator's intentional disposition of the property in issue;

(2) the testator has no testamentary power over the property in issue;

(3) the will itself must put the beneficiary on notice that the beneficiary must make an election—such notice clearly appearing beyond a reasonable doubt;

(4) the one to whom the property in issue actually belongs must be the beneficiary of other property under the testator's will; and,

(5) the beneficiary accepts the other property under the testator's will.

 Before addressing the above five elements to the evidence in the record, it should be first noted that Bank is appealing a negative judgment. As such, they must establish that the evidence is without conflict and leads to but one conclusion and the trial court did not reach that conclusion. *Umbreit v. Chester B. Stem, Inc.* (1978), Ind.App., 373 N.E.2d 1116; *Columbia Realty Corp. v. Harrelson* (1973), 155 Ind.App. 604, 293 N.E.2d 804.

Eva Martin's will stated, in pertinent part:

"*ARTICLE II.* I give, devise and bequeath to my beloved husband, Charles W. Martin, the 60 acres of land which came to me by descent from my deceased mother, a part of my parents' farm in Allen County, Indiana, for and during his natural lifetime, and at his death the remainder to the children of my brothers Harold and Leonard and my sister, Inez, and the heirs of said children, per stirpes and in fee simple.

I give and grant to my said husband during his lifetime the right to use and occupy said land or to rent or lease the same and benefit therefrom as in his interest he deems best. I provide that during his lifetime he shall keep and maintain the taxes and assessments levied against said premises paid as the same shall be come [sic] due and payable.

"*ARTICLE III.* All the rest, residue and remainder of my estate of whatever kind or character and wh eresoever [sic] situate, of which I may die seized or possessed or to which I may be entitled at the time of my decease, I give, devise and bequeath to my beloved husband Charles W. Martin, absolutely and in fee simple, if he be living at my death; otherwise, to the children of my brothers and sister above named per stirpes and in fee simple."

That Eva Martin intentionally disposed of the 60 acres here in dispute by her will cannot be doubted from the clear and unambiguous language. That the property was not hers is equally clear. It is a well settled rule in Indiana that a deed to a husband and wife without qualifying language vests them with a tenancy by the entireties. *Pension Fund of Disciples of Christ v. Gulley* (1948), 226 Ind. 415, 81 N.E.2d 676; *Myler v. Myler* (1965), 137 Ind.

App. 605, 210 N.E.2d 446. Upon the death of one spouse, the surviving spouse takes the entire estate and owns such in fee. *Johnson, supra; State v. Estate of Weinstein* (1967), 141 Ind.App. 395, 228 N.E.2d 23, *rehearing denied*, 141 Ind.App. 399, 229 N.E.2d 741. Upon Eva Martin's death, the 60 acres was clearly property of another, Charles Martin.

It is also clear beyond a reasonable doubt that the language in Eva Martin's will put Charles Martin on "notice" that the disposition of the 60 acres was contrary to his property rights of fee ownership. There can be no doubt that the remainder interest in the 60 acres was to go to the children of Eva Martin's sister and brothers contrary to Charles Martin's rights therein. And finally, Charles Martin accepted substantial benefits under the will in addition to the life estate in the disputed 60 acres. Thus, Charles Martin "elected" to take under the provisions of the will and was bound thereby. The remainder interest passed to the children of Eva Martin's sister and brothers (Stasell) and Bank has no interest in the property.

The trial court correctly interpreted Eva Martin's will and applied the doctrine of equitable election, and Stasell met the burden of proof with respect to that doctrine. We therefore affirm the quieting of title to the 60 acres in Stasell.

## III.

### Admission of Evidence

Bank's final allegation of error is that the trial court erred in the admission into evidence of four letters written by attorneys representing Giovanna and Charles Martin.

Each letter contained the admission that Charles Martin owned only a life estate in the 60 acres. Bank argues that it was reversible error for the trial court to admit admissions against record title ownership in real property.

Error in the admission of evidence does not warrant reversal unless such evidence produces prejudice to the complaining party. *Marsh v. Lesh* (1975), 164 Ind.App. 67, 326 N.E.2d 626. The legal conclusions drawn in the letters by the attorneys of Charles Martin during his life are not relevant to the resolution of the applicability of the doctrine of equitable election. As pointed out in the previous section, the determination of whether Charles Martin "elected" to take under the will in no way depends upon his attorneys' conclusions as to what interest he held in the 60 acres. Therefore, such irrelevant evidence could not, in fact, prejudice Bank's case.[3] Without a showing of prejudice, this Court will not reverse the trial court's judgment even though the evidence admitted was not relevant. *Brademas v. Real Estate Development Co.* (1977), Ind.App., 370 N.E.2d 997. Finding no prejudice, we affirm the trial court.

GARRARD, P. J., and HOFFMAN, J., concur.

3. Bank points out that the trial court made findings of fact which stated that Charles Martin, through his attorney, had made admissions as to owning a life estate only. The trial court's conclusions of law however, were clearly not based upon such a finding. The trial court's conclusion of law with respect to the doctrine of equitable selection states, *in toto*:

"C. The Court further concludes that by voluntarily accepting other substantial benefits under Article II of the Last Will And Testament Of Eva E. Martin, Charles W. Martin is held under the doctrine of election to have bound himself to uphold the Last Will And Testament Of Eva E. Martin as a whole, and to permit the above described real estate to pass under the operation of Article II [*] of the Last Will And Testament Of Eva E. Martin, and that, therefore, Charles W. Martin and his successors in interest are estopped to deny Eva E. Martin's right to devise such remainder interest. . . ."

[*] Note—this was amended by the trial court in response to the motion to correct errors filed by Bank to read "Article III."