| **Attorney for MainSource Bank** | **Attorney for Herman Estate** | **Attorney for Eva Hermann** |
| --- | --- | --- |
| Matthew D. Bailey | Don Hubert Wickens | Frank I. Hamilton, Jr. |
| Greensburg, Indiana | Wickens & Wickens | Hamilton & Tebbe |
| | Greensburg, Indiana | Greensburg, Indiana |

_____

# In the
# Indiana Supreme Court

_____

No.  16S05-0610-CV-351

IN THE MATTER OF THE UNSUPERVISED ESTATE OF NICHOLAS R. HERMANN, DECEASED

MAINSOURCE BANK, TRUSTEE
       OF THE NICHOLAS R. HERMANN TRUST                   *Appellant,*

v.

EVA HERMANN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE
       OF THE ESTATE OF NICHOLAS R. HERMANN,[1]        *Appellee.*

_____

Appeal from the Decatur Circuit Court, No. 16C01-0302-EU-11
The Honorable John A. Westhafer, Judge
_____

On Petition To Transfer from the Indiana Court of Appeals, No. 16A05-0505-CV-244
_____

**April 19, 2007**

**Dickson, Justice.**

     In this appeal, MainSource Bank challenges the trial court order overruling its objections

---

[1] The only party identification in the caption of appellant's notice of appeal is "In the Matter of the Unsupervised Estate of Nicholas R. Hermann, Deceased," which is the caption used in the trial court.  But the parties' briefs are each captioned "MainSource Bank, Appellant/Petitioner v. Eva Hermann, Appellee/Respondent."  This is an appeal from the trial court's final order in the administration of an unsupervised estate for which Eva Hermann was serving as personal representative, and in which estate she was a beneficiary.  In this appeal, separate attorneys have entered their appearances for her in her individual and representative capacities.

to the closing statement filed by Eva Hermann, personal representative of the estate of Nicholas Hermann, her deceased husband. MainSource contends that the trial court erred in failing to require that the parties' entireties property be included as an estate asset under the doctrine of equitable election. The Court of Appeals affirmed, finding the doctrine inapplicable in this case. MainSource Bank v. Estate of Hermann, 843 N.E.2d 69, 73 (Ind. Ct. App. 2006). We granted transfer and conclude that the doctrine of equitable election is inapplicable, but that the calculation of the widow's distribution under the will required consideration of the value of the entireties property.

In January 1994, when Nicholas Hermann and his wife Eva were residing in a home solely titled in Nicholas's name, he executed his last will and testament. It provided in relevant part:

> ITEM 2. I give my jewelry, photographs, household furnishings, yard equipment, and any automobiles to my wife, Eva Hermann.
>
> ITEM 3. I give my guns and stamp collection to my son, John James Hermann.
>
> ITEM 4. I give one-half (1/2) of the residue of my estate to my wife, Eva Hermann. My wife shall receive the home in which we are living at the time of my death as a part of her one-half (1/2) of the residue of my estate. If my wife shall predecease me, I give all of my estate to the Union Bank & Trust of Greensburg, Indiana, in trust as provided in ITEM 5.
>
> ITEM 5. I give one-half (1/2) of the residue of my estate in trust to the Union Bank & Trust Company of Greensburg, Indiana, or its successor. The trust shall be held and administered as follows:
>> (a) The Trustee shall pay the trust income to my son, John James Hermann at least annually. The Trustee shall distribute the principal of the trust to John James Hermann ten (10) years after the date of my death.

Appellant's App'x. at 9-10. Almost three years later, in December 1996, Nicholas's house was sold, and Nicholas and Eva purchased a different home and titled it in both their names as tenants by the entirety. The couple resided in this residential real estate until Nicholas's death in January 2003, after which Eva, as surviving entireties owner, transferred the title to her name only.

Appointed as the sole personal representative for the unsupervised administration of Nicholas's probate estate, Eva administered the estate and distributed the estate property. Among

2

the distributions, Eva received cash, securities, tangible personal property, and an undivided one-sixth interest in approximately thirty acres of farmland, all given to her under the will. In her distribution under Item 4 of the will, Eva determined her one-half of the residuary estate without considering the value of the residential real estate she received as surviving entireties owner. To comply with Items 4 and 5, she distributed one-half of the resulting residuary estate to MainSource Bank, the successor in interest to Union Bank & Trust Company of Greensburg, Indiana, as trustee. Eva filed her closing statement to complete the unsupervised administration of Nicholas's estate.

Within three months thereafter, MainSource filed its objections to the closing statement, which objections included its contention that "[t]he personal representative should have included the appraised value of [the residential real estate] as part of the residue, and the value of this home should have been included as part of Eva Hermann's distribution pursuant to Item 4 of the decedent's Last Will and Testament." Appellant's App'x. at 67. MainSource grounded its contention on the doctrine of equitable election. After a hearing at which evidence and arguments were presented, the trial court rejected the objection, ruling that it did not "find beyond a reasonable doubt that Nicholas Hermann intended to dispose of his wife'[s] real estate, thereby forcing her to make an election." *Id.* at 4-5.

MainSource contends on appeal that the will purported to devise the residential real estate as part of Eva's one-half of the residue of the estate, that Eva did not elect to take against the will but accepted other substantial benefits under it, and thus, under the doctrine of equitable election, Eva accepted the devise of the home under the will and cannot avoid having it included in her share of the residue of the estate, as instructed by the will. Eva counters that equitable election does not apply, that she became owner of the residential real estate as the surviving tenant by the entirety, and that she correctly excluded this property from all consideration in the distribution of the residuary estate.

Our decision today is guided by the paramount objective in construing a will: "to determine and give effect to the testator's true intent," which "is controlling and must be given effect so long as it is not contrary to law." Myers v. Ellerbusch, 746 N.E.2d 408, 409 (Ind. Ct. App.

2001). "In other words, we attempt, if at all possible, to uphold and to give effect to the testator's intent rather than have that intent frustrated." *Id.*; s*ee also* St. Mary's Hosp. of Evansville v. Long, 215 Ind. 1, 5, 17 N.E.2d 833, 835 (1938); Gladden v. Jolly, 655 N.E.2d 590, 592 (Ind. Ct. App. 1995).

Achieving this objective is problematic in wills that clearly express a testator's intent to dispose of property not subject to the testator's disposition. In some of these situations, implementation of the testator's intent has been sought by recourse to the doctrine of equitable election. The effect of the equitable election doctrine has been described as follows:

> [A] person cannot be permitted to hold under a will and also to hold against its provisions; or, in other words, having once accepted beneficial interests under a will, he will be held to have confirmed and ratified every part thereof, and will not thereafter be permitted to interpose any right or claim of his own, however well founded it may be, which would defeat or in any manner prevent the full operation of such will.

Cameron v. Parish, 155 Ind. 329, 337, 57 N.E. 547, 550 (1900). The doctrine "is an obligation imposed upon a beneficiary under a will to 'elect' between two inconsistent rights or claims which have been created by the will or by law." Citizens Nat'l Bank of Whitley County v. Stasell, 408 N.E.2d 587, 590 (Ind. Ct. App. 1980) (Stasell I), *reh'g denied,* 415 N.E.2d 150 (Ind. Ct. App. 1981) (Stasell II). Resort to the doctrine is inappropriate, however, when the implementation of a testator's intent is not impinged by the presence of inconsistent rights or claims:

> It is the settled rule that no case for an election arises unless the gift to one beneficiary is irreconcilable with an estate, interest, or right which another donee is called upon to relinquish; if both gifts can, upon any interpretation of which the language is reasonably susceptible, stand together, then an election is unnecessary.

Cameron, 155 Ind. at 339, 57 N.E. at 551; s*ee also* Johnson v. Hicks, 231 Ind. 353, 359-60, 108 N.E.2d 129, 131-32 (1952).

Where such inconsistency exists, application of the doctrine is governed by requirements set forth in Stasell I:

> (1) the testator's intentional disposition of the property in issue;
> (2) the testator has no testamentary power over the property in issue;
> (3) the will itself must put the beneficiary on notice that the beneficiary must make an election—such notice clearly appearing beyond a reasonable doubt;
> (4) the one to whom the property in issue actually belongs must be the beneficiary of other property under the testator's will; and,

4

(5) the beneficiary accepts the other property under the testator's will.
408 N.E.2d at 592.

The circumstances of the present case do not involve the creation of "two inconsistent rights or claims." Stasell I, 408 N.E.2d at 590. By operation of law, Eva is entitled to the residential real estate as surviving tenant by the entirety. The language of the will, however, does not conflict with this result. It is possible for Eva to acquire the residential property as surviving entireties owner and also to receive from the residuary estate the portion directed in Nicholas's will—a distribution such that, when added to the value of "the home in which we are living at the time of my death," the aggregate would be equal to the portion of the residuary estate distributed to the trust under Item 5.[2] *See* Appellant's App'x. at 17.

Furthermore, even if inconsistent rights had been created, the doctrine would not apply here because the language of the will does not satisfy the first requirement for its application—the *intentional disposition* of the property. The will does not transfer ownership of the residential real estate. The language is instructional and directive, not distributive, with regard to such property. It merely describes the manner of calculation for Eva's distribution from the residuary estate. Thus the will does not satisfy the first or third prerequisites for application of the doctrine because it neither disposes of the property in issue nor necessarily puts Eva on notice that she must make an election.

We acknowledge that the doctrine of equitable election has been applied in Indiana cases involving purported testamentary disposition of entireties property. In Stasell I the disputed entireties property was the subject of dispositional language in a will in which a wife explicitly stated, "I give, devise, and bequeath to my beloved husband" the subject real estate "for and during his natural lifetime, and at his death the remainder" to other designated beneficiaries. Stasell I, 408 N.E.2d at 592. The testamentary language unequivocally demonstrated the testator's intentional disposition of the property in a manner inconsistent with her husband's rights as entireties owner.

---

[2] For details regarding the approximate resulting distribution, see note 3 below.

Entireties property was likewise at issue in <u>Young v. Biehl</u>, 166 Ind. 357, 77 N.E. 406 (1906), in which this Court emphasized:

> It must be made clear by the will beyond all reasonable doubt that the husband intentionally assumed to dispose of his wife's real estate before she can be held, by her election to take under such will, to have bound herself to permit such property to pass under its operations.

*Id*. at 359, 77 N.E. at 407. The doctrine of equitable election was applied, however, because the will provisions clearly "devised to his wife, in lieu of her interest under the law in his land" a life estate interest in real estate that had been owned by the testator and his spouse as tenants by the entirety, *id.* at 358, 77 N.E. at 406, and the court found "there is no room to doubt the intention of the testator, since his will makes unqualified and complete disposition of the title to the land," *id.* at 359, 77 N.E. at 407.

In <u>Ragsdale v. Robinson</u>, 219 Ind. 335, 338, 38 N.E.2d 570, 571 (1942), a husband's will stated, "I give and devise to my brothers in equal shares my farm . . . subject to the life interest" of his mother and wife. Acknowledging that the husband may have often used the term "my farm" to include both the 140-acre tract he owned in fee simple plus the contiguous 80 acres that he and his wife owned as tenants by the entirety, this Court observed that when the testator spoke of the 220 acres as his farm, "it was in truth so, for he owned all of it," notwithstanding his wife's interest in the 80-acre portion. *Id.* at 343, 38 N.E.2d at 573. Quoting with approval the passage from <u>Young v. Biehl</u> set forth above, the Court stated the language in the will provided "no evidence that he believed he was entitled to make testamentary disposition of anything more than the 140 acres, or that by the words, 'my farm,' as used in his will, he intended to describe any more than that over which he had power of testamentary disposal." *Id.* The court declined to apply the equitable election doctrine, holding, "There is nothing in the will from which it appears that [the testator] assumed to dispose of his wife's separate 80 acres." *Id.*

Our accord with the trial court that the doctrine of equitable election does not apply to this case, however, does not mark the end of our inquiry. MainSource objected to the closing of Nicholas's estate because: "In calculating [the] distribution of the residue of the estate, the personal representative failed to include the value of the home in which the decedent and Eva Hermann lived at the time of the decedent's death." Appellant's App'x. at 67. This treatment of

6

the couple's home was called for by the will's residuary clause. In spite of the inapplicability of equitable election to this case, we conclude that MainSource's objection should have been sustained.

The distribution of the "residue of my estate" is directed by Items 4 and 5 of Nicholas's will. Item 4 begins by giving one-half to his wife, Eva, and Item 5 begins by giving one-half to the trust for the benefit of his son. Appellant's App'x. at 9. The testator's intention with respect to the use of the term "residue," however, was specifically explained in the second sentence of Item 4: "My wife shall receive the home in which we are living at the time of my death as a part of her one-half (1/2) of the residue of my estate." *Id.* It is thus clear that Nicholas intended that, following his death, the residue under his will would be apportioned such that there would be an equal division between Eva and the trust of the aggregate of the residuary estate passing under the will and the value of the residential real estate where Nicholas and Eva were living when he died.

In other words, the executor was to calculate the respective distributions by adding the value of the residential real estate to the value of the residuary estate passing under Items 4 and 5 of the will, dividing the sum by two, and distributing to the trust the resulting one-half and to Eva the remaining balance, which would be the difference between that quotient and the value of the entireties property.[3] That the value of the home be considered in calculating Eva's distributive share was Nicholas's intent, without regard to whether the home passed to Eva under the will or otherwise. On this point, MainSource's objection to the closing statement should have been sustained.

We reverse the denial of MainSource's objection to the closing statement and remand for re-determination of the property distribution directed by Items 4 and 5 of the will, and for any further proceedings consistent with this opinion.

---

[3] From the Indiana Inheritance Tax return submitted by Eva as personal representative, the value of the residuary estate was approximately $320,000, Supplement to Appellant's App'x. at 22, and the value of the entireties real estate was $140,000, *id.* at 28. Thus a distribution to Eva of approximately $90,000, when added to the $140,000 value of the residential real estate she acquired as surviving entireties owner, totaling $230,000, would be equal to a distribution to the trust of the difference between the $320,000 residuary estate and the $90,000 portion distributed to Eva.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.